IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TERRENCE A. HARVEY, | ) | |
|     Plaintiff, | ) | Case No. 7:16CV00153 |
| | ) | |
| v. | ) | |
| | ) | |
| GERALDINE G. BAKER, *et al.*, | ) | By: Norman Moon |
|     Defendants. | ) | United States District Judge |

**MEMORANDUM OPINION**

Terrence A. Harvey, a Muslim inmate proceeding *pro se*, commenced this action pursuant to 42 U.S.C. § 1983, against defendants G.G. Baker, I. Hamilton, and H. Ponton. Harvey alleges defendants violated his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et seq*, and the First Amendment's Free Exercise Clause while incarcerated at Red Onion State Prison ("ROSP"). Specifically, Harvey alleges defendants denied his request to receive meals in conformity with his religious beliefs. Defendants collectively filed a motion for summary judgment, arguing that Harvey's claims are meritless, and that defendants are nonetheless entitled to qualified immunity on Harvey's claims for monetary damages. Harvey responded, and defendants subsequently moved to stay discovery pending resolution of their qualified immunity argument. I granted defendants' motion to stay, and this matter is ripe for disposition. Upon review of the record, I conclude that defendants' motion for summary judgment should be granted in part and denied in part.

**I.**

In his verified complaint, Harvey alleges that his Muslim faith compelled him to consume a diet that adheres to his religious beliefs, which includes abstention from consuming pork. Harvey is assigned to special housing in "Administrative Segregation," where he is not offered

the opportunity to choose a different meal if pork is served on the trays, as opposed to inmates housed in general population who are offered prior notice. On the occasions that Harvey received pork in his meal, he notified the prison guards that he could not eat it. Harvey alleges the guards instructed him to not eat the pork, which resulted in Harvey "not getting fed at all." Beginning on March 18, 2015, Harvey attempted to save certain foods from his meals so that he would be able to have food to eat when pork was served. Harvey alleges "countless occurrences" when the prison guards confiscated and discarded this stored food, threatening Harvey with contraband infractions or forfeiture of recreation and shower time. As a result, Harvey was forced to eat pork at least five times in contravention of his religious beliefs. Compl. ¶¶ 2-3, 21-23, Docket No. 1.

On July 31, 2015, the Institutional Classification Authority ("ICA") conducted a hearing to review Harvey's application to receive the Virginia Department of Corrections' ("VDOC") Common Fare Diet ("Common Fare"). The Common Fare menu is designed to meet inmates' religious dietary restrictions, including restrictions of the Muslim faith. Harvey noted on his Common Fare application that he had been practicing Sunni Islam for "over a decade" and wanted Common Fare for health concerns. Harvey did not list any religious materials in his possession or specify which holidays he celebrated on the Common Fare application. Harvey's counselor prepared a report for the Common Fare Application, and both the ICA and a unit manager reviewed the report and application and recommended approval. Compl. ¶¶ 1-6, Docket No. 1; Compl., Ex. A, Docket No. 1-1.

Despite the ICA's recommendation, defendant Baker, who is ROSP's Institutional Programs Manager, reviewed and denied Harvey's Common Fare application on August 6, 2015. Baker questioned Harvey's sincere need for Common Fare, based on the policies outlined in

ROSP's Operating Procedure ("OP"). As the guiding rationale, Baker cited OP 841.3 "Offender Religious Programs" for disapproving Harvey's Common Fare application, which required Harvey to "ascribe to a 'Religious Affiliation recognized and approved to operate in [VDOC] facilities" and "participate in religious services and programs." Baker noted that Harvey enrolled to participate in Wiccan services in November 2014 and there was no evidence that Harvey subsequently changed his religious association to Muslim. Harvey filed a grievance to appeal the ICA decision, contending that his affiliation as a Sunni Muslim was documented in ROSP's records on his "Declaration of Religious Affiliation," he observed Ramadan every year prior to the ICA holding, and had previously possessed religious materials that the prison staff confiscated. Compl ¶¶ 13, 39, Docket No. 1; Compl., Ex. B, Docket No. 1-1.

Harvey alleges that Baker and Hamilton intentionally failed to evaluate and consider Harvey's religious declaration or his participation in Ramadan observance, and instead "made up their own criteria" to disapprove Harvey's Common Fare request. On October 15, 2015, defendant Hamilton, who is the Assistant Warden at ROSP, responded to Harvey's grievance. Hamilton deemed Harvey's appeal of his Common Fare disapproval as unfounded, upholding Baker's reliance on OP 841.3, "Offender Religious Programs." Hamilton reiterated that the record had not fully demonstrated a sincere need for Common Fare based on Harvey's prior enrollment in Wiccan services, and noted that, on October 13, 2015, another prison official "verified" that Harvey did not have a "[Quaran], prayer rug, or any religious materials in [his] possession." Harvey contends that, at the time he applied for Common Fare, he was unable to list any religious possessions because prison officials previously "lost or discarded" the Quaran and Islamic literature Harvey kept in his cell. Harvey then attempted to obtain these materials from the ROSP Chaplain Department prior to his ICA hearing, but this request was not

3

considered in his Common Fare application review. Harvey notified Hamilton of this information in his ICA appeal grievance, but alleges that Hamilton never considered it in making his decision to uphold the Common Fare application disapproval. Compl. ¶¶ 32, 33-34, Docket No. 1.

In upholding Baker's decision, Hamilton also noted that the prison's disciplinary records showed that Harvey had "received numerous infractions over the past year." Harvey contends that his disciplinary infractions have no bearing on his religious association, and reiterated as much on November 23, 2015, when he raised the issue with Baker in a verbal interaction. In response, Harvey alleges Baker told him, "When you receive disciplinary infractions for assaulting staff you can't expect to be accommodated."[1] Compl. ¶¶ 39, 42, Docket No. 1.

Although Hamilton left the ICA's disapproval of Harvey's Common Fare application intact, he advised Harvey to reapply at a later date. Compl., Ex. D., Docket No. 1-1. Harvey appealed Hamilton's grievance decision. On administrative review, defendant Ponton, a VDOC Regional Administrator, upheld Hamilton's grievance decision. With respect to Ponton's review, Harvey alleges that Ponton gave a "very vague rationale" by merely citing OP 841.3 "Offender Religious Programs." Harvey alleges Ponton should have, instead, provided a more thorough review of Harvey's grievance because Ponton had the "opportunity and governmental authority to correct the known violation." Compl. ¶¶ 19-20, 26-29, Docket No. 1. Alternatively, defendant Ponton submitted a sworn affidavit summarizing the review and disposition of Harvey's Common Fare application. Ponton asserts that inmates may only participate in one religious group at a time, and Harvey had not changed his 2014 enrollment in Wiccan services to indicate he associated as a Muslim. ROSP holds open enrollment periods at least once each

---

[1] Harvey states he "is indeed assigned to administrative segregation for an alleged assault on staff."

4

calendar quarter where inmates can change their religious group association; Harvey did not participate in open enrollment. Ponton Aff. ¶ 4-6, 8, Docket No. 16-1.

Despite the disapproval of Harvey's Common Fare application, Harvey did not reapply at a later date. Nonetheless, Ponton submits that ROSP staff made a "good faith effort" to administer the Common Fare program, and reviewed Harvey's application again. The ICA approved Harvey for participation in Common Fare on June 21, 2016, as submitted in the affidavit of third party A.J. Gallihar, Chief of Housing and Programs at ROSP. After his approval, Harvey signed the Common Fare agreement and agreed to the rules of participation. Gallihar Aff. ¶ 4, Docket No. 16-2.

For his alleged constitutional violations, Harvey seeks compensatory and punitive damages, declaratory relief, and injunctive relief. Specifically, Harvey seeks a permanent injunction preventing VDOC from denying Harvey or any other inmate[2] Common Fare based on lack of physical indicia of religion, prior disciplinary infractions, previous associations with other religious groups, or any other "arbitrary" and "irrational" reasons.

## II.

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the pleadings, the disclosed materials on file, and any affidavits show "that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality,… [o]nly disputes over facts that might affect the outcome of the suit under the governing law will

---

[2] To the extent Harvey seeks injunctive relief for "any other inmate," he may not bring claims on behalf of other persons. A *pro se* plaintiff may only litigate his own personal claims. *See* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."); *Myers v. Loudoun Cnty. Pub. Schs.*, 418 F.3d 395, 401 (4th Cir. 2005) ("The right to litigate for oneself…does not create a coordinate right to litigate for others").

5

properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The dispute over a material fact must be genuine, "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). As such, the moving party is entitled to summary judgment if the evidence supporting a genuine issue of material fact "is merely colorable or is not significantly probative[.]" *Anderson*, 477 U.S. at 250.

The moving party bears the burden of proving that judgment on the pleadings is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party meets this burden, then the nonmoving party must set forth specific, admissible facts to demonstrate a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, the court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 322-324; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, the nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence set forth must meet the "substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993).

**III.**

To the extent Harvey brings this action against defendants in their official capacities for monetary damages, such claims are not cognizable under § 1983. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989). Because the prison official defendants in their official

6

capacity are not "persons" who can be sued under § 1983, the court must grant defendants' motion for summary judgment as to these claims.

Likewise, while Harvey may seek monetary damages against defendants in their individual capacity under the First Amendment, he may not under RLUIPA. Congress has not authorized damages against state officials in either their official or individual capacities under RLUIPA. *Sossamon v. Texas*, 563 U.S. 277, 282 n. 1, 293 (2011); *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009). The Fourth Circuit has instructed that "damages are not recoverable on a RLUIPA claim because . . . a state's Eleventh Amendment immunity from suit for damages is not waived in RLUIPA." *Lovelace v. Lee*, 472 F.3d 174, 193-94 (4th Cir. 2006). Accordingly, inasmuch as Harvey seeks monetary damages under RLUIPA, such relief is not available and defendants are entitled to summary judgment as to those claims.

**IV.**

As a preliminary matter, I must determine whether Harvey's RLUIPA claim is moot. Harvey seeks declaratory and injunctive relief with respect to defendants' disapproval of Harvey's Common Fare application. Defendants assert that Harvey's RLUIPA claim is moot because only equitable relief is available under RLUIPA and Harvey was approved for participation in Common Fare on June 21, 2016. Harvey corroborates that he was approved and began participation in Common Fare on that date. However, Harvey contends that defendants arbitrarily approved him, as he never reapplied.

It is well established that "federal courts have 'no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Incumma v. Ozmint*, 507 F.3d 281, 286 (4th Cir. 2007) (citing *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)). However, the

7

Fourth Circuit has held that "a defendant's voluntary cessation of a challenged practice moots an action only if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Wall v. Wade*, 741 F.3d 492, 497 (4th Cir. 2014) (internal quotation marks omitted) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000)). The party asserting mootness has a "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Id*. (alteration in original) (internal quotation marks omitted) (citation omitted). Generally, "when a defendant retains the authority and capacity to repeat an alleged harm, a plaintiff's claims should not be dismissed as moot." *Id*. at 497 (citing *Town of Nags Head v. Toloczko*, 728 F.3d 391, 395 n. 3 (4th Cir. 2013); *Pashby v. Delia*, 709 F.3d 307, 316 (4th Cir. 2013); *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 800 (4th Cir. 2001)).

Presently, Harvey would not benefit from any injunctive relief ordering defendants to provide Harvey with Common Fare meals because he has already received such relief as of June 21, 2016. *See Incumaa*, 507 F.3d at 287 ("[T]he hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed.'") (internal citation and quotation marks omitted). Corrective action was taken: As of June 22, 2016, the Institutional Classification Authority at ROSP "reviewed and approved" Harvey for the diet, even though he had not resubmitted the Common Fare form. (Dkt. 16-2 ¶ 4; dkt. 16-1 ¶ 6). Plaintiff himself admits "ROSP voluntarily approved and assigned" him the Common Fare diet. (Dkt. 19 ¶ 8). Indeed, this remedial action sprung from the institutional review process, which suggests good faith. Finally, nothing in the record indicates that Harvey's Common Fare assignment is at risk of termination, or that defendants or ROSP are willing to subject themselves to potential liability

by doing so. Accordingly, Harvey's claims for injunctive relief requiring Harvey to receive Common Fare meals are moot.

As previously stated, the only potential remedy available under RLUIPA is equitable. Thus, allowing Harvey's RLUIPA claim to proceed past this juncture would subsequently call for no more than an "impermissible advisory opinion." *Church of Scientology*, 506 U.S. at 12 n. 6. For these reasons, I find that defendants have accorded Harvey his original request for injunctive relief by approving his Common Fare request, rendering Harvey's RLUIPA claim moot in full and his First Amendment claim moot to the extent is seeks declaratory and injunctive relief.

**V.**

Harvey asserts a damages claim under the First Amendment's Free Exercise Clause, as incorporated against the States, alleging that defendants denied his request to receive meals in conformity with his religious beliefs. Defendants argue that Harvey's First Amendment claim is meritless, and that they are nonetheless entitled to qualified immunity.

The doctrine of "qualified immunity operates to protect law enforcement and other government officials from civil damages liability for alleged constitutional violations stemming from their discretionary functions." *Raub v. Campbell*, 785 F.3d 876, 880-81 (4th Cir. 2015). In deciding whether a defendant is entitled to qualified immunity, the court must determine "(1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Id.* at 881 (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). A plaintiff's claim "survives summary judgment, however, only if [the court] answer[s] both questions in the affirmative." *Id.* "The burden of

proof and persuasion with respect to a defense of qualified immunity rests on the official asserting that defense." *Meyers v. Baltimore Cty., Md.*, 713 F.3d 723, 731 (4th Cir. 2013).

## A.

Taking the facts in his favor, as the Court must do at this stage, Harvey sufficiently establishes a violation of his Free Exercise rights. To state a claim under the Free Exercise Clause, "an inmate, as a threshold matter, must demonstrate that: (1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion." *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018) (citing *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)). A "substantial burden" on a person's religious exercise is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate h[is] beliefs[.]" *Couch v. Jabe*, 679 F.3d 197, 200 (4th Cir. 2012) (alterations and omission in original) (quoting *Lovelace*, 472 F.3d at 187). The inmate must demonstrate that the substantial burden was a product of a defendant's conscious or intentional interference with religious rights. *Wall*, 741 F.3d at 500 n. 11. However, when determining whether a defendant or prison's practice substantially burdens the inmate's religious exercise, "courts must not judge the significance of the particular belief or practice in question." *Lovelace*, 472 F.3d at 187 n. 2.

When an inmate establishes that a prison policy or practice substantially burdens his religious exercise, however, there is no First Amendment violation "if the government can demonstrate that it 'is reasonably related to legitimate penological interests.'" *Carter*, 879 F.3d at 140 (quoting *Turner v. Safley*, 482 U.S. 78, 89-92 (1987)). Whether a regulation is reasonably related depends on:

> "(1) [W]hether there is a 'valid, rational connection' between the prison regulation or action and the interest asserted by the government, or whether this interest is 'so remote as to render the policy arbitrary or irrational'; (2) whether 'alternative means of exercising the right …

> remain open to prison inmates,' an inquiry that asks broadly whether inmates were deprived of all forms of religious exercise or whether they were able to participate in other observances of their faith; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any 'obvious, easy alternatives' to the challenged regulation or action, which may suggest that it is 'not reasonable, but is [instead] an exaggerated response to prison concerns.'"

*Lovelace,* 472 F.3d at 200 (citing *Turner*, 482 U.S. at 89-92) (internal quotation marks and citations omitted).

Harvey establishes a sincerely-held religious belief. He avers that he has identified as a Sunni Muslim for "over a decade," that he observed Ramadan each year, possessed religious materials, abstained from consuming pork as a practicing Muslim, and squirreled away food to sustain him when he received meals he could not in good conscious consume.

Additionally, Harvey establishes that defendants' conduct and policies substantially burdened his religious beliefs as a Sunni Muslim. Harvey, who has administrative segregation status, avers it is VDOC policy to not notify inmates in administrative segregation when pork will be served. As a result, Harvey was unable to receive prior notice of whether pork would be served and was threatened with disciplinary infractions or confiscation when he attempted to store permissible foods to eat in case his next meal contained pork. This caused Harvey to be forced to eat pork five times or unable to eat at all. Effectively, defendants' actions forced Harvey to choose between his religion and eating. That's a substantial burden.

Harvey then applied for Common Fare because it was the only diet provided by the VDOC that met his religious requirements, yet defendants denied Harvey's application because—in their view—he did not adequately demonstrate sincerity of his religious beliefs. However, part of Harvey's religious beliefs includes abstention from consuming pork, and it appears that defendants' conduct and VDOC policies forced Harvey to demonstrate his sincerity

11

in beliefs *before* being permitted to undertake a full religious practice (*i.e.*, having a religiously permissible diet). As such, defendants' conduct and policies put "substantial pressure" on Harvey to "modify his behavior and to violate his beliefs" by the repeated denial of a diet adhering to his Sunni Muslim beliefs. *Lovelace*, 472 F.3d at 187.

Accordingly, I find that Harvey's allegations establish a cognizable First Amendment Free Exercise claim. Defendants do not address the *Turner* factors or argue their conduct or policies were penologically justified. Having not raised the issue, the Court declines to construct an argument for the defendants.

**B.**

Turning to qualified immunity, Harvey had a clearly established constitutional right to receive meals in conformity with his religious beliefs. *See Raub*, 785 F.3d at 881 (A court "may address [the qualified immunity] questions in the order . . . that will best facilitate the fair and efficient disposition of each case.").

The alleged violations of Harvey's religious rights occurred in 2015. In 2014, the Fourth Circuit reaffirmed that an inmate has a "clearly established . . . right to a diet consistent with . . . his religious scruples[.]" *Wall v. Wade*, 741 F.3d 492, 502 (4th Cir. 2014) (citing *Lovelace*, 472 F.3d at 199). While other courts have specifically held that the denial of halal foods to a Muslim prisoner places a substantial burden on his religious exercise, *see e.g.*, *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1316-17 (10th Cir. 2010), the Fourth Circuit addresses an even "broader right at issue: that inmates are entitled to religious dietary accommodations absent a legitimate reason to the contrary." *Wall*, 741 F.3d at 502. And a clearly established right "includes not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked." *Wall*, 741 F.3d at 502 (quoting *Pritchett v. Alford*,

973 F.2d 307, 314 (4th Cir. 1992)). Consequently, a reasonable official in defendants' positions could not serve pork or non-halal meals to a Muslim inmate. That is, Harvey had a clearly established right to receive a religiously conforming diet, a right that—on the summary judgment record—the defendants denied.

\* \* \*

Because Harvey states a cognizable claim for violation of his clearly established rights under the First Amendment, defendants are not entitled to summary judgment on the First Amendment damages claim.

## VI.

For the reasons stated, defendants' motion for summary judgment will be denied in part and granted in part. Discovery will be unstayed and the defendants will have 30 days to respond to Harvey's interrogatories. This matter will be set for jury trial out far enough for the parties to engage in meaningful discovery.

An appropriate order will be entered this day.

ENTER this  10th  day of September, 2018.

*/s/ Norman K. Moon*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE